UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEGO A/S, and LEGO SYSTEMS, INC., <br><br> Plaintiffs, <br> v. <br><br> BEST-LOCK CONSTRUCTION TOYS, INC., <br><br> Defendant. | 3:11-CV-1586 (CSH) |

**RULING ON MOTIONS FOR PROTECTIVE ORDER**

**HAIGHT, Senior District Judge:**

**I.    Introduction**

On July 11, 2012 the Court filed its Ruling on Defendant's Motion for Preliminary Injunction [Doc. 79], reported at 2012 WL 2829454, familiarity with which is assumed. That Ruling deferred decision on the parties' cross- motions for preliminary injunctions until certain specified areas of discovery had been completed and the need for a further evidentiary hearing considered.

This action for copyright infringement is replete with commercially sensitive issues and involves very considerable sums. Not surprisingly, counsel for the parties perceived early on the need for protective confidentiality orders in aid of discovery and continuing litigation. The most recent submissions of counsel address that subject: *see* Docs. 90, 91, 93, 96, 97, and 98. These voluminous papers demonstrate that the attorneys for both sides have made good faith efforts to agree upon a mutually satisfactory protective order. The Court salutes counsel for those efforts.

1

Much progress toward a Peace Treaty was made, but two points of conflict remain. This Ruling resolves them.

**II.     Discussion**

Counsel have exchanged and re-exchanged proposed drafts which seek to achieve a single comprehensive protective order applicable to all parties and all phases of the litigation. During the course of that cooperative venture, areas of agreement expanded and points of dispute were narrowed. The Court's attention is now directed to Exhibit 1 to a LEGO brief [Doc. 97], which the brief characterizes as "a document showing a comparison between the two proposed orders." *Id*. at 1. Referring to that document [Doc. 97-1], LEGO's brief continues: "The LEGO Group does not oppose the changes made by Best-Lock other than those made to paragraphs 5 and 6 – dealing with 'Confidential' and 'Highly Confidential' material respectively." [Doc. 97] at 2.

Accordingly, the only disputes between the parties with respect to the protective order arise out of ¶¶ 5 and 6 of the current draft ("the Draft Order"). These two paragraphs deal with "Discovery Material" designated by the "Designating Party" as either "Confidential" or "Highly Confidential." Such designations "shall be made in good faith by the Designating Party and made at the time of disclosure, production, or tender . . . " Draft Order at ¶ 4. A Designating Party may designate as "Confidential" any Discovery Material believed to contain "non-public, confidential or proprietary information . . . " ¶ 2. A Designating Party may designate as "Highly Confidential" any Discovery Material that the Party "in good faith believes constitutes, reflects, or concerns trade secrets" or other sorts of material "the disclosure of which is likely to cause harm to the competitive position of the Designating Party." ¶ 3.

The Draft Order follows these broad provisions with paragraphs which undertake to limit the

persons to whom disclosure of covered material may be made. ¶ 5 performs that function with respect to "Confidential" material; ¶ 6 performs it with respect to "Highly Confidential" material. Each paragraph provides in preliminary fashion that such material "may be disclosed, described, or otherwise communicated or made available in whole or in part, directly or indirectly, only to the following persons: . . . ." The two paragraphs' designations differ somewhat, but I need not recite them fully: for present purposes, it is sufficient to discuss the two particular points upon which disputes have arisen.

¶ 5(b) provides for disclosure of Confidential material to "employees" of the parties, defined as "current employees, directors or officers for each of the parties to this action." (Such individuals are distinguished from employees of "Counsel for the named parties in this action," who are dealt with separately in ¶ 5(a)). The version preferred by LEGO allows disclosure to a party's "employees" if "counsel reasonably believes that disclosure to such persons may assist in the prosecution or defense of this action." The version preferred by Best-Lock fashions a procedure whereby the "receiving party" of discovery material must "notify the producing party that the receiving party desires to disclose specified items to Confidential Information to identified employee(s) of the receiving party." If after exchanges of views by the parties a dispute exists with respect to whether particular material may be disclosed to particular individuals, "the disclosure question may be referred to the Magistrate Judge assigned to this case."

¶ 6(b) of the Draft Order deals – or refuses to deal – with disclosure of Highly Confidential material to "inside counsel for the named parties in this action." I phrase the proposition in that manner because LEGO prefers disclosure to "inside counsel" under certain circumstances, while Best-Lock would bar any such disclosure outright. ("Inside counsel" are distinguished from "outside

counsel" for the parties, to whom disclosure is permitted by ¶ 6(a), as one would expect in a document drafted by outside counsel). LEGO's version allows disclosure of Highly Confidential material to inside counsel "who either have responsibility for making decisions dealing directly with this litigation or who are assisting outside counsel in this litigation, provided that such inside counsel exercise no competitive decision making authority on behalf of any named party."

Protective orders limiting access to confidential or highly confidential information are commonplace in litigation involving trade secrets, research, product development, marketing plans, and other forms of commercial conduct or expression. Where, as here, the parties compete with each other directly in a specialized market, the need for protective orders is maximized, as is the number of judicial decisions considering them. The briefs of counsel in the case at bar cite many cases. However, whether a protective order should issue and what it should say are fact-intensive questions, a reality diminishing the precedential value of decisions in a much-litigated area of the law. The broader principles are easy enough to identify. "Where a party seeks a protective order restricting the scope of discovery of technical, proprietary information, the court should balance the interests of full disclosure of relevant information and reasonable protection from economic injury. . . . The competing interests to be evaluated in determining the outcome of such a dispute are one's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors." *Infosint, S.A. v. H. Lundbeck A.S.*, No. 06CIV2869, 2007 WL 1467784 (S.D.N.Y. May 16, 2007) (citations and internal quotation marks omitted).

Applying those salutary principles to this case, I conclude, first, that the procedure Best-Lock suggests for the dissemination of Confidential material to employees of a receiving party furthers those principles and consequently should be included in the protective order. The procedure gives

gives both parties, if so advised, the right and a protocol by which to seek protection (rightly or wrongly, that is for another day) of "its confidential materials from misuse by competitors." I think that LEGO's brief overstates the complexities, delays and expenditures of time that the procedure may generate. I assume that as discovery goes forward, counsel will demonstrate the professionalism that has marked this case thus far. There may be no objections to disclosure to speak of, in which event inclusion of the procedure in the protective order causes no harm. On the other hand, if objections abound and some are justified, that would indicate that the nature, degree and intensity of the parties' competition require an extra layer of judicial scrutiny, lying easily within the competence of an able Magistrate Judge. The Court resolves this dispute in favor of Best-Lock.

As for the inside counsel dispute, I resolve it in favor of LEGO and the protective order will include its version of ¶ 6(b). This is a complex and complicated case. It is not difficult to imagine that LEGO's ability to conduct effective litigation will be enhanced by the contribution of its insider counsel, who would need to be informed in order to contribute most meaningfully. "Whether it is appropriate for [LEGO's inside counsel] to be denied access to [Best-Lock's] 'highly confidential' information depends on whether they are involved in competitive decision-making, thereby creating a risk of inadvertent disclosure, and, if so, the hardship their exclusion would impose on [LEGO]."*Infostint*, 2007 WL 1467784, at *3. In the case at bat, LEGO's proposed language explicitly guards against that problem arising. Perhaps, in a world populated by men and women and not angels, the risk of "inadvertent disclosure" can never be eliminated entirely, but surely that risk can be minimized, and so it is in this case. The court will not assume that LEGO would make disclosures to insider counsel who should not receive them; or that insider counsel to whom disclosure is made would act dishonorably or in violation of the mandates the protective order itself

will impose upon them.

### III. Conclusion

For the foregoing reasons, the motion of Plaintiff LEGO A/S for a protective order [Doc. 90] is GRANTED IN PART and DENIED IN PART.

The motion of Defendant Best-Lock Construction Toys, Inc. for a protective order [Doc. 94] is GRANTED IN PART and DENIED IN PART.

The parties are directed to submit to the Court for signature a Protective Order whose terms and conditions are consistent with this Ruling.

Upon entry of that Ruling, the Court will make an Order of Reference to a Magistrate Judge for supervision of the case in the manner described in the Ruling.

It is SO ORDERED.
Dated: New Haven, Connecticut
December 11, 2012

                                            /s/ *Charles S. Haight*
                                            Charles S. Haight, Jr.
                                            Senior United States District Judge