UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEGO A/S, and LEGO SYSTEMS, INC., <br><br>            Plaintiffs/Counterclaim <br>            Defendants, <br>  v. <br><br> BEST-LOCK CONSTRUCTION TOYS, INC., BEST-LOCK LIMITED, HONG KONG, and BEST-LOCK GROUP, <br><br>            Defendants/Counterclaim <br>            Plaintiffs. | Civil Action No.: <br> 3:11-CV-1586 (CSH) <br><br><br><br> MAY 20, 2014 |

## ORDER

**HAIGHT, Senior District Judge:**

During the year just passed, this interesting and important case has been somewhat like a sleeping volcano. The last wisp of steam was visible on May 13, 2013, when the Court signed a Protective Order [Doc. 110], preceded by energetic litigation as to the form it should take. If there has been activity in the case since then, its nature and extent are not revealed by the docket entries.

I am not at a loss for cases to work on, and do not routinely goad counsel into action in a particular case. But there are special circumstances in this case which prompt the directions contained in this Order.

Specifically, in an opinion dated July 11, 2012 [Doc. 79] and reported at 874 F.Supp.2d 75 (*Lego I*), I denied the parties' cross-motions for preliminary injunctions, and made certain directions for the future conduct of the case. The record to that date revealed significant issues with respect

to the passage of time, principally the time interval between Lego's first awareness of Best-Lock's allegedly infringing products and Lego's filing this action for damages at law and relief in equity. With respect to Best-Lock's proffered defenses to Lego's claims, *Lego I* held that "Best-Lock is not entitled to prevail on the ground of equitable estoppel," and then considered at some length the equitable defense of laches, "a less complicated concept than that of equitable estoppel," where in certain circumstances "[a] defendant may fail to demonstrate all the elements of equitable estoppel, and still make out the defense of laches." 874 F.Supp.2d at 86.

The discussion of laches in *Lego I* posed as one of the relevant questions: "Does the equitable doctrine of laches apply at all to an action for copyright infringement, such as the one at bar?", *id.* at 87, an inquiry leading to the observation that "[w]hether laches may in any circumstances bar a legal claim for damages in a copyright infringement case is complicated by the statute of limitations in the Copyright Act, 17 U.S.C. § 507(b)", and the subsidiary question: "May the equitable doctrine of laches operate to bar an action for copyright damages that was timely filed under the Copyright Act?", *id*. at 89-90. *Lego I* quoted District Judge Scheindlin's notation that "[t]he circuits are split on this issue and the Second Circuit's silence has led to some confusion within this district as well." *Id*. at 90 (quoting *Price v. Fox Entm't Group, Inc.*, No. 05 Civ. 5259, 2007 WL 241387, at *2 (S.D.N.Y. Jan. 26, 2007)).

This Court's reflections on that issue in *Lego I* resulted in the direction, at the conclusion of the Ruling, "for discovery into Lego's possible laches: a question common to both motions." 874 F.Supp.2d at 107. Presumably, during the intervening year some discovery into the laches issues identified and discussed by this Court in *Lego I* has been going on. But it has become necessary to revisit that aspect of the case. It is apparent that this Court's ruminations on copyright-related laches

and attendant discovery now belong, at least in part, on the ash-heap of discarded district court jurisprudence. That is because on May 19, 2014, the Supreme Court decided *Petrella v. Metro-Goldwyn-Mayer, Inc.*, No. 12-1315, __S.Ct.__, 2014 WL 2011574 (U.S. May 19, 2014). *Petrella* resolves the circuit conflict noted by Judge Scheindlin (and by this Court in *Lego I*) and holds that the equitable doctrine of laches "cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window" of § 507(b)'s statute of limitations. [1] *Id.* at *4. The Supreme Court proscribes different treatment in respect of equitable relief, and a plaintiff's ultimate remedy in the event of a proven infringement; the Court said in *Petrella*: "As to equitable relief, in extraordinary circumstances, laches may bar at the very threshold the particular relief requested by the plaintiff. And a plaintiff's delay can always be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing the profits of the infringer attributable to the infringement." *Id.* (citing and quoting 17 U.S.C. § 504(b))( internal quotation marks and ellipsis omitted). Notably, the Court cited as persuasive precedent for the first of these latter two propositions the Second Circuit's opinion in *New Era Publications Int'l v. Henry Holt & Co.*, 873 F.2d 576, 584-585 (2d Cir. 1989), which received prominent mention in *Lego I*. *See Petrella*, 2014 WL 2011574, at *13. A question that arises in the case at bar is whether the Supreme Court's decision in *Petrella* has an immediate effect upon the parties' ongoing or planned discovery. Counsel will know more about that than I do, but I want to know also.

In these circumstances, and if the parties remain determined to litigate this case to a conclusion, I think it advisable to reconvene a dialogue between Court and counsel to assess the

---

[1] The Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).

present status of the case and consider future handling.  To that end, counsel are directed to deliver to the Court simultaneously letters on **June 12, 2014**, stating their perceptions of the present status of the case, where the case should go next, and how we should get there.  These should be informal communications; there will be sufficient opportunity for argument, if necessary, later on.  Counsel should include in their letters a discussion of the effect, if any, of the *Petrella* case on the case at bar, and recommendations as to whether a status conference between Court and counsel would be useful at this time (and, if so, what the agenda should be).  I would be amenable to a telephone conference call (transcribed by a court reporter), if counsel prefer to avoid the time and expense of another trip to New Haven (although the place is recovering nicely from the rigors of a brutal winter).

The case will be considered further after the Court has received the letters of counsel described above.

It is SO ORDERED.

Dated: New Haven, Connecticut
May 20, 2014

> */s/Charles S. Haight, Jr.*
> CHARLES S. HAIGHT, JR.
> Senior United States District Judge