# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEGO A/S and LEGO SYSTEMS, INC., <br><br>          Plaintiffs, <br><br>  v. <br><br> BEST-LOCK CONSTRUCTION TOYS, INC., and BEST-LOCK LIMITED, HONG-KONG, <br><br>          Defendants. | |
| BEST-LOCK CONSTRUCTION TOYS, INC., BEST-LOCK LIMITED, HONG-KONG, and BEST-LOCK GROUP LIMITED, <br><br>          Counterclaim Plaintiffs, <br><br> v. <br><br> LEGO A/S and LEGO SYSTEMS, INC., <br><br>          Counterclaim Defendants. | 3:11-cv-01586 (CSH) <br><br><br> **January 18, 2017** |

## RULING ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO RECONSIDER

**HAIGHT, Senior District Judge**:

On October 14, 2011, Plaintiffs LEGO A/S and LEGO SYSTEMS, Inc. (collectively "Lego" or Plaintiffs) initiated this action, alleging infringement of two copyrights filed in 1994, VA 655-104 and VA 655-230 (the "Minifigure Copyrights"). The Complaint, as amended on August 30, 2012, alleges that Defendants Best-Lock Construction Toys, Inc. and Best-Lock Limited, Hong Kong (collectively "Best-Lock") infringed the Minifigure Copyrights through its actions producing

and selling similar minifigures in the United States.  Specifically, Lego asserts claims for (1) infringement of the Minifigure Copyrights under 17 U.S.C. § 101, *et seq.*; (2) defamation; and (3) violation of the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 42-110a, *et seq.*  Second Amended Complaint (Doc. 84).  Lego seeks to enjoin and restrain Best-Lock from manufacturing or selling its minifigures, and asserts claims for its "actual damages" caused by the alleged infringement and for the award of Best-Lock's profits generated thereby.  *Id.* at 10-11.

For its part, Best-Lock has asserted several affirmative defenses and Counterclaims claiming, *inter alia*, that (1) the Minifigure Copyrights are invalid and unenforceable; (2) Best-Lock is entitled to a declaratory judgment that the sale of Best-Lock's minifigures does not infringe on the Minifigure Copyrights; and (3) Best-Lock is entitled to an injunction requiring Lego to consent to the importation and delivery of Best-Lock's goods in the United States.  Best-Lock Answer (Doc. 86). Best-Lock also added Best-Lock Group Limited as a Counterclaim Plaintiff.  *Id.* ¶ 87.

The Court has previously decided several motions and disputes between the parties. Familiarity with those earlier rulings is assumed.  The Court denied motions for preliminary and permanent injunctions sought by both parties, without prejudice to renewal after discovery and after assessing the need for a further evidentiary hearing.  874 F. Supp. 2d 75 (D. Conn. 2012) ("*Lego I*"). The Court subsequently granted Lego's motion to join Best-Lock Hong Kong as a Defendant, but denied Lego's motion to add Torsten Geller as a Defendant.  886 F. Supp. 2d 65 (D. Conn. 2012) ("*Lego II*").  Thereafter, the Court settled a dispute between the parties regarding the terms of a Protective Order governing the action, 2012 WL 6156129 (D. Conn. Dec. 11, 2012) ("*Lego III*"), a ruling the Court subsequently declined to reconsider, 2013 WL 1611462 (D. Conn. April 15, 2013) ("*Lego IV*").

Prior Court orders had considered and adjudicated the proper conduct of mutual pretrial discovery, which gave every indication of being complex in nature and global in scope.  To all outward appearances, the discovery aspect of the case had been going on apace when, on  March 16, 2016, Best-Lock changed the litigation focus dramatically by filing pursuant to Fed. R. Civ. P. 41(b)  a Motion to Dismiss Lego's Second Amended Complaint (Doc. 84), based on Lego's asserted failure to prosecute the action.  The parties have fully briefed that Motion.  Best-Lock filed a Memorandum of Law in Support of the Motion ("Best-Lock Dismiss Br.") on March 16, 2016 accompanied by an Affidavit of Lawrence S. Rosenthal ("Rosenthal Dismiss Aff.") with twenty-six exhibits attached and an affidavit of Torsten Geller ("Geller Dismiss Aff.") with two additional exhibits attached.[1]  Doc. 128.  Lego filed a Memorandum in Opposition to the Motion ("Lego Dismiss Br.") accompanied by an Affidavit of Elizabeth A. Alquist ("Alquist Dismiss Aff.") with twenty-three exhibits attached.  Doc. 129.  Best-Lock thereafter filed a Reply Memorandum in Support of the Motion ("Best-Lock Reply Br.") and additional exhibits.  Docs. 133-34.

While this Motion to Dismiss by Best-Lock was pending, Lego filed a Motion for Partial Summary Judgment as to liability for its infringement claims under Count One of its Second Amended Complaint, as well as on several of Best-Lock's affirmative defenses and Counterclaims. Docs. 130-32.  Best-Lock then filed an Emergency Motion to Deny, Dismiss or Stay Lego's Motion for Partial Summary Judgment ("Emergency Motion") with a supporting memorandum of law ("Emergency Motion Br.") and affidavit in support of its Emergency Motion ("Rosenthal Rule 56(d) Aff."), arguing that Lego's Motion for Partial Summary Judgment should be denied or stayed in light

---

[1] The Court will refer to Best-Lock's Exhibits for this Motion to Dismiss as "Best-Lock Dismiss Ex." and "Dismiss Reply Ex." and to Lego's Exhibits as "Lego Dismiss Ex."

of the fact that Best-Lock's Motion to Dismiss was pending.  Doc. 135.  Best-Lock also purported to make that Emergency Motion pursuant to Rule 56(d), which authorizes the district court to issue an "appropriate order" when the nonmovant for summary "cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).

The Court initially granted Best-Lock's Emergency Motion, denying Lego's Motion for Summary Judgment without prejudice to refiling once the Motion to Dismiss was resolved.  Doc. 136.  Lego sought reconsideration of the Court's Doc. 136 Order ("Lego Reconsider Br.").  Doc. 137.  As a result, the Court vacated its Doc. 136 Order and stayed the requirement for Best-Lock to file an opposition to partial summary judgment in favor of Lego until the Court decided Lego's Motion to Reconsider.  Doc. 139.  Best-Lock then filed an opposition to Lego's Motion to Reconsider ("Best-Lock Reconsider Br.").  Doc. 141.  Lego filed a reply brief in support of its Motion to reconsider ("Lego Reply Br.").  Doc. 142.

Out of this welter of motion activity, two motions presently ripe for decision emerge:  Best-Lock's Motion to Dismiss Lego's Second Amended Complaint; and Lego's Motion for Reconsideration of the Court's Order staying Lego's Motion for Partial Summary Judgment until Best-Lock's Motion to Dismiss has been adjudicated.  This Ruling resolves those two pending motions.

## I.    Background and Procedural History

I begin with a background and procedural history that is applicable to both motions.

Lego first filed a Complaint in this action against Best-Lock on October 14, 2011.  Doc. 1.  Lego has manufactured toys called "minifigures" since 1978.  These minifigures depict people, each with a cylindrical head, cylindrical neck, a trapezoidal torso, bent arms, hooked hands and square

block-like feet.  Each is designed so that the user can disassemble them and attach them to other figures and to studded blocks.  All the minifigures have the same shape but vary in the two-dimensional representations of facial features and clothing styles on the torso and head respectively. In 1994 Lego registered its Minifigure Copyrights with the United States Copyright Office.

Best-Lock has been selling its own minifigures in the United States since 1998.  These minifigures can also be attached to studded blocks and are the same size as Lego's, with cylindrical heads, cylindrical necks, trapezoidal torsos, bent arms, hooked hands and square block-like feet. The minifigures differ in color and also in the two-dimensional representations of facial features and clothing.  Other companies such as Hasbro, Inc. and Mega Brands, Inc. Create and sell similar minifigures.

On or about July 14, 2011, the U.S. Customs and Border Protection Service ("CBP"), at the behest of Lego,  carried out the first of a series of seizures of shipments from abroad of Best-Lock's toy blocks and minifigures.  The CBP, administratively echoing Lego's principal allegation in the case, asserted that such a seizure occurred because Best-Lock's minifigures infringed Lego's '104 copyright.  Best-Lock petitioned to have CBP release the shipments and cease the seizures, to no avail.  Best-Lock's initial efforts to liberate its minifigures did not succeed.

Best-Lock filed an Answer to Lego's initial Complaint on January 5, 2012 and asserted certain counterclaims against Plaintiffs.  Doc. 25.[2]  Best-Lock amended this Answer and Counterclaims on February 6, 2012 and moved for a Preliminary Injunction against Lego.  Docs.

---

[2]  Best-Lock also filed a separate Complaint against Lego Juris AS, Lego Group and Lego Systems Inc., which was transferred to this District and consolidated with the present action in March 2012.  Doc. 58.  The parties represented to the Court that Best-Lock would add those allegations as Counterclaims to the instant action so that there would be a "single set of pleadings to direct this case."  Doc. 67.  The cases have thus proceeded on that basis.

35, 37.[3]  Lego filed an Amended Complaint on February 13, 2012, Doc. 40, and sought to join two additional Defendants to this action, Docs. 44-45.  Best-Lock twice sought extensions for its time to respond to the Amended Complaint, Docs. 42, 47, both of which this Court granted, Docs. 46, 49 in February 2012.  The parties both sought extensions to respond to discovery requests in March 2012.  Docs. 56-57.

The parties fully briefed Best-Lock's motion for a Preliminary Injunction.  Docs. 37, 43, 52. The Court held a hearing on Best-Lock's motion, as well as on Lego's motion to join two additional Defendants on March 8, 2012.  Doc. 60.  Best-Lock subsequently filed a partial opposition to Lego's motion to join additional Defendants and Lego filed a reply brief in support.  Docs. 63, 71.  The Court requested supplemental briefing related to Best-Lock's motion for a Preliminary Injunction, Doc. 74, which the parties filed on May 11, 2012, Docs. 75-76.  The Court also granted Lego an extension to respond to Best-Lock's discovery requests on May 15, 2012.  Doc. 78.

On July 11, 2012, the Court denied Best-Lock's motion for a Preliminary Injunction, 874 F. Supp. 2d 75 (*Lego I*).  On August 20, 2012, the Court granted in part and denied in part Lego's motion to join two additional Defendants, 886 F. Supp. 2d 65 (*Lego II*).  Thereafter, Lego filed a corrected Second Amended Complaint, Doc. 84, which Best-Lock filed an Answer and Counterclaims to on September 13, 2012, Doc. 86.  Lego filed an Answer to these Counterclaims on October 4, 2012.  Doc. 92.  The parties each moved for a Protective Order in the fall of 2012. Docs. 90-91, 93-94.  The Court granted in part and denied in part each of these motions in December 2012, 2012 WL 6156129 (*Lego III*).  Lego requested and was granted more time to file for reconsideration of that Ruling.  Docs. 100-101.  In April 2013, the Court denied reconsideration of

---

[3] Best-Lock also moved for a Temporary Restraining Order at that time, Doc. 36, which this Court denied in an Electronic Order, Doc. 38, on February 7, 2012.

its Ruling on the Protective Order, 2013 WL 1611462.  In May 2013, the Protective Order issued in this action.  Doc. 110.

On May 20, 2014, the Court directed counsel to send simultaneous letters on June 12, 2014 updating the Court on the status of the case and recommending how the case should proceed.  Doc. 113.  In that Order, the Court recognized that the case had become "somewhat like a sleeping volcano," *id.* at 1, and inquired as to the impact of the Supreme Court's decision in *Petrella v. Metro-Goldwyn Mayer, Inc.*, 134 S. Ct. 1962 (2014) on the parties' discovery, Doc. 113 at 3.  *Petrella,* which resolved a conflict between circuits, held that laches cannot be invoked to preclude adjudication of a claim for damages for copyright infringement brought within the three-year window of the applicable statute of limitations for such claims.  *Id.*  That holding directly impacted the case at bar, because this Court had previously concluded that laches did apply in the copyright context,  and that more discovery between the parties on laches-related issues was necessary to a decision on a preliminary or permanent injunction.  The parties submitted letter briefs to the Court, and the Court held a telephonic conference to further discuss the pending discovery issues.  Docs. 115-117.  At the conference, the parties disputed whether discovery should be bifurcated, with Best-Lock seeking to bifurcate discovery so as to limit it initially to its defense of equitable estoppel.  The Court reserved a decision on bifurcation.

On March 23, 2015, the Court directed that counsel for each party file letters detailing the status of the case and attend a telephonic status conference.  Doc. 118.  The Court held another telephonic conference on April 9, 2015, and on April 15, 2015 issued a ruling directing that discovery would not be bifurcated.  Doc. 120.  The Court directed counsel to file further status reports on October 15, 2015.  *Id.* at 3.  The parties agreed after this Ruling that prior discovery

requests would be deemed abandoned and the only operative requests going forward would be newly propounded requests.  Lego Dismiss Ex. J.  Each party subsequently moved for extensions of time to respond to certain discovery requests, which the Court granted.  Docs. 123-24, 126-27.  When the parties filed their letters updating the Court on the status of the case, it was clear that the parties were continuing to attempt to resolve ongoing discovery disputes.  *See*, *e.g.*, Lego Dismiss Ex. D.  This was confirmed by the extensive correspondence between the parties filed with the Court related to this motion.  That correspondence extended from September 14, 2015 through December 23, 2015. Lego Dismiss Exs. K-V.

On March 16, 2016, Best-Lock filed the instant Motion to Dismiss, based on Lego's asserted failure to prosecute.  Doc. 128.  On April 13, 2016, before Best-Lock's Motion to Dismiss was fully briefed and while it was still pending, Lego filed its Motion for Partial Summary Judgment, Docs. 130-32.  As noted *supra*, the Court initially granted Best-Lock's Emergency Motion to deny this Motion for Partial Summary Judgment without prejudice to refiling for good cause shown under Federal Rule of Civil Procedure 56(d).  Lego has sought reconsideration of this decision.  That is the second of the two pending motions resolved by this Ruling.

The Court now turns to consideration of Best-Lock's Motion to Dismiss, and then to Lego's Motion to Reconsider.

## II.     Motion to Dismiss for Failure to Prosecute

### A.     Standard of Review

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  The Supreme Court perceives the value of this rule to be that it prevents "undue delays"

and "congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). The authority of a district court to dismiss an action on one or another of these grounds "cannot seriously be doubted" and can be done *sua sponte* by a district judge. *Id.* at 630-31. Pursuant to the law of this Circuit, five factors must be weighed by this Court in considering a Rule 41(b) dismissal: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)) (internal quotation marks omitted). "No single factor is generally dispositive." *Id.* (citing *Nita v. Conn. Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994)).

While dismissals under Rule 41(b) are reviewed for abuse of discretion, the Second Circuit has stressed that it is "'the harshest of sanctions'" and "insist[ed] that dismissal 'be proceeded[4] by particular prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Id.* at 217 (quoting *Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013)). Indeed, even where the court issues a notice of possible dismissal and a plaintiff does not comply with the court's directive, "the court must still make a finding of 'willfulness, bad faith, or reasonably serious fault' by evaluating those criteria." *Id.* (quoting *Mitchell,* 708 F.3d at 467). Moreover, the Second Circuit has instructed that dismissal "should be used in only extreme situations." *Id.* (quoting *Mitchell*, 708 F.3d at 467) (internal

---

[4] Thus in original; verb should probably read "preceded."

quotation marks omitted).

**B.    Discussion**

As a preliminary matter, the Court notes that in their briefs on this motion, counsel have disputed with an asperity bordering on *ad hominem* the procedural history of this litigation, numerous facts related to Lego's and Best-Lock's alleged delay and failures, and discovery issues that have apparently been festering in this litigation for years.   Indeed, those latter disputes run through the present briefs to such an extent Best-Lock felt it necessary to remind the Court at the outset of its motion to dismiss that "[t]o be clear, this motion is not a motion for an Order related to discovery."   Best-Lock Dismiss Br. at 2.

That distinction is worth drawing, because a motion to dismiss a complaint for failure to prosecute is not the appropriate vehicle to litigate discovery issues encountered by either side.   To the extent the disputes are relevant to any alleged delay, the Court will take that into account. Otherwise, both parties were, and are still, free to bring motions related to these discovery failures before the Court.   Because they have chosen not to do so at this point, the Court has no occasion to, and does not determine, what discovery should or should not have happened.   The Court will now analyze each of the factors recited in *Baptiste* to determine whether a Rule 41(b) dismissal should be granted.

**1.    Duration of Delay**

"The first factor to be examined breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether those failures were of significant duration." *U.S. ex rel. Drake v. Norden Systems*, 375 F.3d 248, 255 (2d Cir. 2004) (citation omitted).

A motion asserting a failure to prosecute requires a two-part inquiry: (1) whether the failures to move the case forward were ascribable to the party plaintiff, here Lego; and (2) whether those

failures were of a duration sufficient to warrant the ultimate sanction of dismissal. *See id.* In complex and strenuously contested cases, such as this one pitting Lego against Best-Lock and *vice versa*, it is not uncommon for the litigation to progress in fits and starts over dams and obstructions, rather than flowing as a smooth and steady stream. The trial judge's function in Rule 41(b) practice is to ascribe responsibility for delay to one party, or to the other, or to both, or to neither. "The question we must ask with respect to duration is simply whether or not the delay was caused by plaintiff's side as a whole." *Id.*

There were several periods of inactivity throughout this time-consuming litigation that warrant discussion and further analysis. The first interval, when the battle fleets were drawn up but appeared on the surface to be becalmed, occurred from the Court's entry of the Protective Order on May 13, 2013 until May 20, 2014 when the Court ordered the parties to update it on the status of the litigation. Docs. 110, 113.[5] Thus, the delay was for just over a year. Notably, neither the Court nor the Clerk warned Lego that failing to continue to prosecute the case at that juncture could lead to dismissal of the case. Instead, in its May 20, 2014 order the Court sought only an update on the status of the case and to assist in moving the case along, in light of the recent Supreme Court decision in *Petrella*. Doc. 113.

At that point, both parties represented that they had been engaging in settlement negotiations, which according to Lego were taking place on a global scale. Lego Dismiss Ex. A at 1 (June 12, 2014 letter from Best-Lock stating "[t]he parties are actively pursuing settlement"); Lego Dismiss Ex. B at 1 (June 12, 2014 letter form Lego stating "[s]ince this Court's July 11, 2012 Ruling on

---

[5] Best-Lock asserts that this delay started on October 4, 2012. *See* Best-Lock Dismiss Br. at 7. However, as recounted in Part I of this Ruling, there was an ongoing dispute about the entry of a Protective Order that occurred during this period and that was not fully resolved until the Protective Order issued on May 13, 2013. Docs. 109-10.

defendant's Motion for Preliminary Injunction [Doc. 79], the parties have engaged in extensive global settlement negotiations lead by counsel for the parties in Germany").  The Court recognized in its June 17, 2014 Order, Doc. 115, that the parties had stated the settlement negotiations had occurred "with differing degrees of emphasis."  *Id.* at 1.  Best-Lock emphasizes that it had made the settlement offer to Lego and Lego had never even responded.  Best-Lock Dismiss Br. at 11; Best-Lock Reply Br. at 5.  Best-Lock, therefore, faults Lego for this entire period of delay, a charge Lego vehemently denies.  Lego Dismiss Br. at 3-5.  In any event, although this period of delay is significant in length, it is, to some extent, excused by the fact that the parties agree settlement discussions were occurring, at least in some fashion, with neither party appearing willing to move the case for that reason, or due to outstanding disputes.[6]

Importantly, Best-Lock also expressed a desire to bifurcate the discovery to the Court at this point, in response to the Court's inquiry on May 20, 2014.  Lego Dismiss Ex. A.  It is clear that at this time, both parties disagreed over the scope of appropriate discovery (although no discovery motions were then pending).  The Court ordered a telephone conference to discuss moving the case forward, given the differing approaches expressed in the parties' letters.  Doc. 115.  The conference was held on July 10, 2014.

The second period of litigation inactivity occurred from the date of the Court's conference, July 10, 2014, through March 23, 2015.  *See* Docs. 117-118.  This inactivity resulted principally

---

[6] Best-Lock at various points reiterates that it is the duty of the plaintiff to move the case forward, and thus, only Lego should have fault for this period of seeming inactivity.  Although Best-Lock's point is well-taken, Lego has alleged that Best-Lock is also responsible for the delay by failing to respond to Lego regarding its 26(f) Report proposal and creating the various discovery disputes.  Lego Dismiss Br. at 7-10.  Although Lego should have taken action against Best-Lock for any repeated stalling, the Court intervened and made such action unnecessary during this delay.

from Best-Lock's request to bifurcate discovery, Lego's opposition to that procedure, and the Court's consideration and eventual denial of the bifurcation request.   At the conclusion of the telephonic conference held July 10, 2014, the Court reserved decision on whether discovery should be bifurcated—to proceed first only on the issue of Best-Lock's equitable estoppel defense, and then continuing in full flood only after a dispositive decision on that issue.  Dismiss Reply Ex. 18 at 32. The Court explicitly advised counsel that the case would continue only after it rendered a decision on the issue.  That decision was filed on April 15, 2015, Doc. 120.  Prior to that decision, the Court requested an update on the case from the parties on March 23, 2015.  Doc. 118.[7]  The Court takes neither pride nor satisfaction in the amount of time it took to decide this bifurcation issue; but the pertinent point for present purposes is that this portion of delay was not caused in any degree by "the plaintiff's side."

The final period of inactivity occurred from October 9, 2015 until Best-Lock's Motion to Dismiss  filed on March 16, 2016, promptly followed by Lego's motion for partial summary judgment on April 13, 2016.  During this interval of more than five months, nothing occurred on the docket and neither party filed any motions or sought to enforce or revise a scheduling order.  The letters submitted by Lego and Best-Lock as exhibits, including those submitted to the Court on

---

[7] Best-Lock faults Lego for acting as though it would move the case along, offering scheduling orders and never following through.  *See* Best-Lock Dismiss Br. at 8-11, 17; Best-Lock Reply Br. at 8.  Such actions are certainly unacceptable, but the Court cannot conclude that this is what Lego has done.  The docket activity and correspondence between the parties indicates that there were simply significant areas of dispute between the parties regarding discovery, scheduling and a number of issues.  In addition, as one of Best-Lock's primary examples, Best-Lock repeatedly faults Lego for saying it would move forward with discovery at the July 10, 2014 telephonic conference and then not doing so, *see* Best-Lock Reply Br. at 8. However, as the Court has explained, such delay was in part due to Best-Lock's request to bifurcate discovery, Lego's opposition to that request and the Court's own delay in deciding the issue.

October 15, 2015 as requested by its April Order, Doc. 120, clearly demonstrate that the parties were contesting certain discovery issues and conducting extensive correspondence back and forth at least from September 14, 2015 through December 23, 2015.  Lego Dismiss Exs. K-V; Best-Lock Dismiss Exs. 6, 12, 14, 17-19.  Despite these ongoing disputes, in the last status updates provided to the Court on October 15, 2015, Lego represented that discovery would be completed by the end of January 2016 and suggested that the parties provide status reports at that time.  Lego Dismiss Ex. D.

Based on the correspondence presented to the Court, it appears that Lego had revised its responses to Best-Lock's discovery and sent to opposing counsel a series of letters, the last three on December 23, 2015, which addressed Best-Lock's issues with Lego's discovery responses and took issue with Best-Lock's production and responses to discovery requests.  Lego Exs. T-V.  Nothing appears to have happened after Lego sent these letters until Best-Lock filed the instant Motion to Dismiss, Lego then risposting with its Motion for Partial Summary Judgment.  Lego contends this delay occurred because Best-Lock never responded to this most recent correspondence.  Lego Dismiss Br. at 15-16.  Best-Lock's main and reply briefs fail to address its lack of response to such letters; Best-Lock simply asserts repeatedly that the delay was caused by Lego and asserts that Lego had, in Best-Lock's view, inadequately updated its responses.  *See* Best-Lock  Dismiss Br. at 11; Best-Lock Reply Br. at 7.  Lego contends that it faced deciding whether to file a motion to compel production, given Best-Lock's refusal to produce certain requested documents, or to file a motion for partial summary judgment, on the theory that such relief was warranted even in the absence of those documents.  Lego Dismiss Br. at 15-16.  Lego asserts that it was in the process of filing that motion for summary judgment at the time of Best-Lock's Motion to Dismiss, *id.* at 16, and it did so file the motion within a week of filing its opposition to Best-Lock's Motion to Dismiss.  Best-Lock

responds that Lego filed its summary judgment motion only in a belated and transparent effort to avoid dismissal for its own failure to prosecute.  Best-Lock Reply Br. at  2.

These conflicting perceptions of motivation are not surprising, but do not matter.  Regardless of Lego's motives in filing its Motion for Partial Summary Judgment, there was a nearly four-month period of inactivity by Lego from December 23, 2015 until April 13, 2016 when Lego filed it's Motion for Partial Summary Judgment, about one month after Best-Lock filed the instant Motion to Dismiss and a week after Lego had filed its opposition to the instant motion.  Lego had left the impression with the Court that discovery would be complete by the end of January 2016.  When that appeared to no longer be likely, the Court was not informed and apparently the correspondence between the parties ceased altogether.  However, the inactivity during this period can fairly be equally attributed to Lego and Best-Lock, since Best-Lock totally failed to respond to Lego's outstanding December 23 letters, whose purpose was to get the case moving.  Instead of responding to Lego's letters, Best-Lock did nothing in the case and waited until March 16, 2016 to file Motion to Dismiss on the ground, not free of irony, that Lego was doing nothing in the case.

Best-Lock spends a large portion of its brief arguing that in addition to these delays, Lego has "stonewalled during periods of discovery" and has not properly responded to Best-Lock's discovery requests, which has had the effect of delaying the case and preventing Best-Lock from filing its own summary judgment motion.  Best-Lock Dismiss Br. at 7, 11-17.  However, Lego has not disregarded a Court Order or failed to comply with discovery rules altogether; instead, Lego has responded to each of Best-Lock's requests and objected to some of them.[8]  Lego has a right to do so.

---

[8] Best-Lock relies on *M&H Cosmetics, Inc. v. Alfin Fragrances, Inc.*, 102 F.R.D. 265, 267 (E.D.N.Y. 1984) to assert that Lego's delay and incomplete discovery responses are sufficient to support Rule 41(b) dismissal.  However, this case is distinguishable.  In *M&H*, the plaintiff failed to take any action on the case for over a year, at which point the Court held a

Best-Lock was, and is, free to challenge Lego's discovery responses and objections through a proper motion to compel production.  Even if I accept the scenario presented by Best-Lock, I cannot conclude that such conduct on Lego's part caused delays of "significant duration," as courts in this Circuit construe that phrase in the Rule 41(b) context.  *See*, *e.g.*, *Lassen v. Hoyt Livery, Inc.*, No. 13-01529, 2015 WL 2352248, at *3-4 (D. Conn. May 15, 2015) (denying Rule 41(b) dismissal where delay consisted of certain plaintiffs' failure to produce documents in a four-month period, but where plaintiffs had responded to the requests promptly).[9]

In each period of inaction and consequent delay described *supra*, there were at least some legitimate reasons for the delay (in one instance, ascribable to the Court itself).  The delays are, in most cases, attributable in some measure to both parties: a reality the Court cannot disregard in the context of a motion seeking to impose upon Lego the "harshest" remedy of being nonsuited.  Each time the Court intervened in this contentious case, Lego responded and took some action to further move the case, albeit slowly.  This sufficiently distinguishes this action from others relied upon by Best-Lock, where dismissal was granted or affirmed after the plaintiff failed utterly to move the case along or was wholly unresponsive to the defendants.  *See*, *e.g.*, *Chira v. Lockheed Martin Corp.*, 634 F.2d 664, 666-67 (2d Cir. 1980) (affirming Rule 41(b) dismissal where plaintiff failed altogether to comply with court order and six-month deadline for discovery); *West v. City of New York*, 130

_____

status conference and ordered discovery completed by a set date.  *Id.* at 267.  Plaintiff then failed to adequately and timely respond to discovery requests and defendant sought dismissal of the litigation.  *Id.*  Here, Lego has responded in full to Best-Lock without the intervention of the Court.  Best-Lock may not appreciate Lego's responses due to Lego's objections and lack of information given or documents produced, but again, that is grounds for a motion to compel not a motion to dismiss for failure to prosecute.

[9] At most there was recently a four month delay attributable to both parties.  Such a period of time is not significant enough to even warrant a warning that the case may be dismissed from the Clerk pursuant to this District's Local Rules, D. Conn. Local R. 41(a).

F.R.D. 522, 523-24 (S.D.N.Y. 1990) (dismissing case pursuant to Rule 41(b) in light of a delay of over one year by plaintiff and plaintiff's failure to conduct any discovery prior to expiration of the time ordered by the court).

Best-Lock characterizes the delay as occurring for the entire pendency of this case, over five years, without any movement of significance by Lego.  For the reasons described above, and based on the procedural history recounted in Part I, the Court does not find that to be an accurate portrayal.  Although the case has moved slowly, perhaps more so than it should, more than one ship is responsible for the convoy's leisurely pace.  It would be unjust to say that "the delay was caused by plaintiff's side as a whole" (a phrase the Second Circuit made clear in *Drake* included the plaintiff and his attorney).  *See Drake*, 375 F.3d at 255.  This case surely does not present a unilateral and altogether inexcusable failure by plaintiff Lego to prosecute it for over five years.[10]  Nor has Best-Lock been an innocent bystander, harmed by delays solely ascribable to other parties.

Best-Lock is correct that this litigation has in general been pending too long and without significant progress toward an appropriate resolution.  The recent delay in which the parties wholly failed to communicate, the unresolved discovery disputes between both parties and the lack of any deadlines to move this case forward are concerning.  Regardless, the delays clearly do not warrant dismissal.

_____

[10] Best-Lock points to Lego's actions in resolving two other litigations regarding copyright infringement, an investigation before the United States International Trade Commission and another in this district based on that investigation, as evidence that Lego is unnecessarily delaying this action.  Best-Lock Dismiss Br. at 3-4.  However, those litigations were based on other patents and copyrights and the investigation settled because of Best-Lock's agreement to a Consent Order Stipulation.  Lego Dismiss Ex. W.  The Court finds Best-Lock's comparisons unpersuasive.

## 2.    Notice that Failure to Comply Would Result in Dismissal

The second factor the Court must consider is the adequacy of notice that failure to comply and prosecute the action would result in dismissal.  "A court's prior warning of dismissal, and subsequent inaction by plaintiff, weighs in favor of dismissal."  *Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) (citations omitted).  The Court never warned Lego that any of its inaction or inactivity would result in dismissal of its case.  Each of the times the Court intervened and requested updates from the parties, the Court did not mention dismissal as a possibility.  Docs. 113, 118.

Best-Lock asserts that the fact that the Court had to intervene should be enough to put Lego or any reasonable attorney on notice that the case may be dismissed due to a lack of prosecution.  Best-Lock Dismiss Br. at 17-18.  The Court disagrees.  The Second Circuit has "insist[ed]" that any dismissal "'be proceded by particular procedural prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Baptiste*, 768 F.3d at 216-17 (quoting *Mitchell*, 708 F.3d at 467).  Lego received no such notice and no opportunity to be heard regarding the reasons for any delay.  In *Baptiste*, the Second Circuit faulted a district court's orders for failing to "provide clear guidance on how [the plaintiff] could avoid dismissal." *Id.* at 218.  Here, Lego was afforded no opportunity at all to avoid dismissal, and the Court never provided any such guidance on avoiding dismissal to Lego.  Moreover, the Second Circuit has repeatedly considered it an abuse of discretion to grant Rule 41(b) dismissal where the plaintiff received no notice that his or her case was "on the brink of dismissal if [plaintiff] failed to respond." *Nita*, 16 F.3d at 486 (concluding that this factor, among others, suggested that the dismissal was an abuse of discretion); *see also Baptiste*, 768 F.3d at 216-17 (holding that a district court's dismissal was an abuse of discretion in part because plaintiff received inadequate notice and

did not receive an opportunity to be heard).

Although the "absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing [does not] necessarily render such a dismissal void," the circumstances must show that the party had knowledge as to the consequences of his own conduct. *Link*, 370 U.S. at 632-33. Here, the circumstances are not sufficient to show that Lego had knowledge that dismissal was even an option being considered by the Court (and in fact was not), let alone that dismissal might be granted at this juncture. The lack of notice weighs heavily against dismissal.

### 3.       Prejudice to Defendants from Further Delay

The next factor the Court must examine "is whether defendants are 'likely to be prejudiced by further delay.'" *Drake*, 375 F.3d at 256 (quoting *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001)). Prejudice may be presumed in certain circumstances, but the need to show actual prejudice is proportionally greater where the delay is more moderate or excusable. *Id.* (citing *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)).

Best-Lock asserts that because of this litigation, and its dragged out nature, its sales have been diminished and it is losing profit every single day the litigation continues. *See* Best-Lock Dismiss Br. at 18; Geller Dismiss Aff. ¶¶ 13-16. Best-Lock also argues that the litigation itself has cost a significant amount, given the stop-and-go nature of the litigation, and that because of Lego's discovery related delays it has been unable to completely formulate its equitable estoppel defense. *See* Best-Lock Dismiss Br. at 18.[11] Lego does not dispute that Best-Lock may "theoretically" be

---

[11] The Court notes that this is an interesting assertion because Best-Lock previously argued during the April 9, 2015 telephonic conference that even then, prior to the current discovery disputes, on that record Best-Lock was entitled to dismissal of Lego's infringement claim on the ground of equitable estoppel. Doc. 120 at 2. Of course circumstances change and counsel is not held to such an assertion, but it is worth noting here that Best-Lock previously went so far as to make such an argument.

suffering from the loss of its sales of the product and that customers may not be buying the product due to infringement fears.  Lego Dismiss Br. at 30.  Lego argues that because the delays were due to ongoing disputes between *both* parties, Best-Lock cannot claim prejudice.

Having concluded that the delays occurring throughout this litigation were at least in part excusable and not significant enough to warrant dismissal, the Court does not agree with Best-Lock that prejudice should be presumed in this instance.  Best-Lock also fails to demonstrate that it will suffer actual prejudice as the result of this particular sort of delay.  Best-Lock will likely continue to suffer ongoing damages and associated litigation costs from the continuation of this litigation—a point with which even Lego "theoretically" agrees.  However, Best-Lock has not provided sufficient evidence to the Court from which the Court can conclude that the delays complained of have increased its litigation costs and ongoing damages unnecessarily, to any material degree.  *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001).

In addition, Best-Lock claims it has not received discovery needed to put forward its defense and that this has prejudiced it going forward.  Best-Lock Dismiss Br. at 19.  Best-Lock is not claiming that such evidence is unavailable to it because of the delay or any continued delay, but instead confines itself to complaining that Lego has wrongfully refused to produce it.  Again, such a complaint is one more properly made in a motion to compel.  Best-Lock cannot suffer prejudice from some theoretical evidence it has been denied if Lego is rightfully refusing to give it (or does not have it at all).  At this point, the Court is without any basis to conclude that Best-Lock has been denied discovery through Lego's alleged delays in a manner that has caused actual prejudice.  *See Baptiste*, 768 F.3d at 218 (concluding that defendants have "not pointed to any concrete way that they have suffered or will suffer prejudice due to [plaintiff's] delay" and that asserting in the abstract that the likelihood of evidence no longer existing is insufficient to suggest prejudice); *see also*

*LeSane*, 239 F.3d at 210 (noting that defendant gave no indication that the delay "reduced (perhaps due to decaying evidence) their likelihood of success on the merits").

Moreover, Lego is correct that where "defendants themselves [are] responsible for much of the delay" prejudice will be lacking. *Martens*, 273 F.3d at 181-82. Here, the delays occurred because of ongoing disputes between the parties often regarding discovery and possible settlement. Although it is unclear to the Court that Best-Lock was responsible for *much* of the delays, Best-Lock did contribute to at least some of the delays.

For the above reasons, this factor also weighs slightly in favor of not dismissing this action and is at best neutral in the analysis.

### 4.    The Court's Interest in Managing Its Docket

The fourth factor requires the Court to consider "the balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard." *Drake*, 375 F.3d at 257. There must be "compelling evidence of an extreme effect on court congestion." *Baptiste*, 768 F.3d at 218-19 (quoting *Lucas v. Miles*, 84 F.3d 532, 535-36 (2d Cir. 1996)) (internal quotation marks omitted). The Court has noted to the parties in the past that it is "not at a loss for cases to work on," Doc. 113, and another district court has noted that "it is not an efficient use of the Court's time to allow this case to languish on the docket in perpetuity on the possibility that, at some unknown future date, Plaintiff will reappear to pursue his claims." *Crenshaw v. McNamara*, No. 15-6229, 2016 WL 2347485, at *5 (W.D.N.Y. May 4, 2016). The Court agrees with the sentiment expressed in *Crenshaw* in that it is not an efficient use of the Court's time to have this action pending without any end date in sight (or any operative scheduling order for that matter). Still, the Court has not been presented with any "compelling evidence" of the "extreme effect" this action has had on the congestion of the Court's docket, and the Court is aware of none. On balance, this factor is at best

neutral in the analysis.

### 5.      Adequacy of Lesser Sanctions

Finally, lesser sanctions would adequately address the issues presented by Best-Lock. District courts have been instructed by the Second Circuit to "meaningfully consider alternative sanctions." *Martens*, 273 F.3d at 182.  As mentioned numerous times in this Ruling, the true nature of the disputes at issue appear to be the lack of discovery obtained by both parties.  Dismissal is not the appropriate remedy to address such issues.  Instead, as recognized by Lego, the entry of a scheduling order and appropriate motion deadlines would assist in the expedient resolution of this matter.  *See Baptiste*, 768 F.3d at 219 (noting that the district court could have effectively moved the case forward without simply dismissing the action).

### 6.      Balance of the Factors

On balance, the factors clearly do not favor or warrant the "harshest" remedy of dismissal in this case.  The delays, although at times lengthy and occurring far too often, have been—at least in part— due to the conduct of both parties and of the Court.  Lego had no notice that it would be facing dismissal for inaction on its part in this litigation.  The litigation has not overly congested this Court's docket.  Even assuming that Best-Lock has demonstrated actual prejudice that has resulted or would result from the continuation of this case or further delay, that is not alone enough to warrant dismissal.  Lesser sanctions would adequately address the issues raised by Best-Lock's Motion, which largely concern a lack of discovery Best-Lock feels it is entitled to.  Moreover, the Court has not found any "'willfulness, bad faith, or reasonably serious fault'" by Lego, a necessary requirement to issuing a Rule 41(b) dismissal.  *Baptiste*, 768 F.3d at 217 (quoting *Mitchell,* 708 F.3d at 467).  Best-Lock's Motion to Dismiss is therefore **DENIED.**

The Court now turns to Lego's pending Motion to Reconsider.

-22-

**III.** **Lego's Motion to Reconsider**

As recounted earlier, Lego filed a Motion for Partial Summary Judgment and supporting memorandum of law ("Motion for Partial Summary Judgment Br.") as well a Statement of Material Facts on April 13, 2016.  Docs. 130-32.   Best-Lock filed an Emergency Motion, which the Court initially granted denying Lego's Motion for Partial Summary Judgment pursuant to Rule 56(d). Lego immediately filed a Motion to Reconsider this decision because it did not have a chance to initially respond to Best-Lock's Emergency Motion prior to the Court's Order, and as a result the Court vacated its initial Order and stayed the deadline for Best-Lock to file an opposition until it decided Lego's Motion to Reconsider.  Doc. 139.  The Court now turns to Lego's Motion to Reconsider the Court's initial Order denying Lego's Motion for Partial Summary Judgment without prejudice.

**A.** **Reconsideration of this Court's Order**

A district court may grant a motion to reconsider because of the need to prevent manifest injustice and to prevent clear error.  *See Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, et. al, *Fed. Prac. & Proc.* § 4478, at 790).   Reconsideration, though generally denied and subject to strict standards, may be granted when "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion of the court."  *Jackson v. Post Univ. Inc.*, No. 08-1810, 2012 WL 1189075, at *4 (D. Conn. April 9, 2012) (quoting *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  In the case at bar, the Court gave no consideration to Lego's arguments because Lego, through no fault of its own, had no opportunity to respond to Best-Lock's Emergency Motion.  Given that particular circumstance, I think it right to grant, and hereby do grant, Lego's Motion to Reconsider, to the extent that both

pending motions must now be adjudicated on their merits (Lego's Motion to Reconsider and Best-Lock's Emergency Motion).[12]   Accordingly, the Court addresses Lego's arguments opposing Best-Lock's Emergency Motion in full.[13]

**B.      Merits of Lego's Opposition to Best-Lock's Emergency Motion**

Rule 56(d) permits a court, in the exercise of its discretion, to defer or deny a decision on summary judgment if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Lego principally asserts that Best-Lock fails to satisfy the requirements necessary to justify denying its Motion for Partial Summary Judgment because Best-Lock does not demonstrate how the undiscovered evidence could create a genuine issue of material fact. Lego Reconsider Br. at 3. That failure is material because Rule 56(d) requires "submitting an affidavit that includes 'the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful.'" *Whelehan v. Bank of Am.*, 621 F. App'x 70, 73 (2d Cir. 2015) (summary order) (quoting *Paddington Partners v. Bouchard*, 34 F.3d

---

[12] The Court finds unpersuasive Best-Lock's arguments that granting the motion to reconsider is unnecessary because there is no manifest injustice or clear error. Because Lego had no opportunity to respond through no fault of its own, its arguments deserve consideration by this Court. Moreover, as there is merit to the arguments raised by Lego as described further in this Ruling, reconsideration is necessary.

[13] As an initial matter, one of Best-Lock's arguments in its Emergency Motion was that the Court should deny or stay Lego's Motion for Partial Summary Judgment until resolution of Best-Lock's Motion to Dismiss. Emergency Motion Br. at 2. Because the Court has resolved Best-Lock's Motion to Dismiss in this Ruling, such an argument as a reason to support the denial or stay of Lego's Motion for Partial Summary Judgment is now moot. The Court will only address the other arguments for granting the Emergency Motion raised by Best-Lock and opposed by Lego.

1132, 1138 (2d Cir. 1994) (applying earlier and substantially similar version of the Rule)).[14]

Courts have declined to continue discovery pursuant to Rule 56(d) where the affidavits submitted in support insufficiently or conclusorily described forthcoming evidence and how that evidence would demonstrate the existence of a genuine issue of material fact. *See, e.g.*, *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004) (affirming district court's implicit denial of discovery where plaintiff failed to "demonstrate that additional discovery was needed in order to decide the jurisdictional issue"); *United States v. Private Sanitation Indus. Ass'n*, 995 F.2d 375, 377 (2d Cir. 1993) (affirming district court's denial of discovery where affidavit "only speculated about what further discovery might reveal" and failed to "describe[] in specific terms evidence that might be forthcoming and would demonstrate that a genuine issue actually existed"); *Riley v. Town of Bethlehem*, 44 F. Supp. 2d 451, 459 (N.D.N.Y. 1999) (concluding that an affidavit failed to adequately explain "why plaintiff cannot oppose summary judgment without discovery"). Moreover, "[a] court is not required to withhold consideration of a summary judgment motion based on mere speculation." *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 638 F. Supp. 2d 360, 372 (S.D.N.Y. 2009).

However, the Second Circuit has also made it clear that "summary judgment should only be granted if '*after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 303-04 (2d Cir. 2003) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)) (emphasis in original). "The nonmoving party must have had the opportunity to discover information that is essential to [its] opposition to the motion for

---

[14] Curiously, Best-Lock's Emergency Motion and supporting papers never once recites or refers to this standard or any applicable caselaw.

summary judgment." *Hellstrom*, 201 F.3d at 97 (internal quotation marks and citation omitted). Moreover, "[o]nly in the rarest of cases may summary judgment be granted against a [nonmovant] who has not been afforded the opportunity to conduct discovery." *Id.* (citation omitted).

Lego's Motion for Partial Summary Judgment seeks judgment as to liability on Count I of its Second Amended Complaint for copyright infringement. Motion for Partial Summary Judgment Br. at 4-12. Lego argues that it is entitled to summary judgment on this Count because it holds valid copyrights that Best-Lock is infringing upon by actually copying the protectable elements of the Minifigure Copyrights. *See id.* Lego also asserts that it is entitled to summary judgment dismissing Best-Lock's affirmative defenses of invalidity, laches and equitable estoppel, as well as on several of Best-Lock's related Counterclaims, which assert the invalidity of the copyrights, non-infringement of the copyrights, and fraud on the copyright office, the CBP and this Court. *Id.* at 12-35. Specifically, Lego argues that Best-Lock cannot prove that the Minifigure Copyrights are invalid, because (1) the copyrights do not protect functional elements of the figures, and (2) Lego has not perpetuated some fraud on the copyright office in filing for the copyrights. *Id.* at 13-19. Lego asserts that Best-Lock's laches and equitable estoppel defenses each depends upon a crucial form of inaction on Lego's part, which the facts of the case preclude Best-Lock from showing. *Id.* at 19-21.

Lego argues that Best-Lock's laches defense fails as a matter of law, in light of the *Pertrella* decision, and that Best-Lock's equitable estoppel defense also fails as a matter of law because Best-Lock cannot prove the necessary elements of that defense. *Id.* at 21-22. In addressing Best-Lock's equitable estoppel defense, Lego first argues that as a matter of law Best-Lock must show something more than "bare inaction" by Lego to support the defense, which Best-Lock cannot do. *Id.* at 22-24. Lego alternatively argues that Best-Lock cannot prove the elements necessary to support the

defense. *Id.* at 24-35.  Lego assumes, for purposes of its motion only, that Best-Lock can establish an issue of fact as to the first element of the defense—whether Lego had knowledge of Best-Lock's alleged continuing, historical infringement. *Id.* at 25-26.  Lego argues instead that Best-Lock cannot prove the other elements of the defense because (1) Best-Lock cannot show that Lego acted or failed to act in a manner that would justify Best-Lock's reliance (defeating the second element of the defense as the defense was articulated by this Court in *Lego I*); (2) Lego's affixation of the copyright notice on the figures would have shown Best-Lock that the figures were protected by copyright (defeating the second and third elements of the defense as the defense was articulated by this Court in *Lego I*); and (3) Best-Lock cannot prove that it detrimentally relied on Lego's conduct or inaction (defeating the fourth element of the defense as the defense was articulated by this Court in *Lego I*). *Id.* at 26-35.

Best-Lock submitted a four-page Rule 56(d) affidavit in support of its Emergency Motion. *See* Rosenthal Rule 56(d) Aff.  This affidavit does not explain how the requested discovery could conceivably create any genuine issues of material fact in response to the specific and narrow arguments made in Lego's Motion for Partial Summary Judgment.  For example, Best-Lock seeks discovery on the "conception and design of Lego's Minifigures," Rosenthal Rule 56(d) Aff. ¶ 3.  However, Best-Lock fails to explain how such discovery could assist it with creating any genuine issue of material fact, or how all the discovery it has already received is insufficient on this point.  As another example, Best-Lock asserts that it needs discovery on "Lego's initial and continuous knowledge of Best-Lock's alleged infringement."  Rosenthal Rule 56(d) Aff. ¶ 3.  This assertion ignores a significant circumstance:  Lego's Partial Summary Judgment Motion *assumes* that Best-Lock can create a genuine issue of material fact as to whether Lego knew of the continuing infringement by Best-Lock in the context of Best-Lock's equitable estoppel defense.  Lego Motion

for Partial Summary Judgment Br. at 25-26.[15]  Lego argues that it is entitled to summary judgment, notwithstanding that conceded point, because Best-Lock cannot establish the other elements of its estoppel defense.  Best-Lock fails to explain how the demanded discovery is relevant to these particular issues, or to its opposition to Lego's limited motion for summary judgment.[16]

Moreover, the relief requested by Best-Lock's Rule 56(d) affidavit is wholly conclusory and fails to explain how or why Best-Lock would be entitled to such relief.  For example, the Rosenthal Rule 56(d) Aff. ¶ 4 requests *all of the discovery* requested in Best-Lock's Consolidated and Operative Interrogatories, Consolidated and Operative Requests for Production of Documents and Things, and Operative Consolidated Requests for Admission.  Rosenthal Rule 56(d) Aff. Exs. A-C. This totals fifty pages worth of requests for documents and admissions, and includes, for example, requests related solely to damages, Rosenthal Rule 56(d) Aff. Ex. A at 5 ¶ 3, an issue not presented in any way by Lego's Motion for Partial Summary Judgment.  The Court cannot determine, in the absence of any explanation by Best-Lock, which discovery requests would lead to evidence of the sort necessary to create a genuine issue of material fact as to the specific questions presented by Lego's Motion, as opposed to information having nothing to do with issues the Motion raises. Similarly, Best-Lock also appears to complain about the lack of depositions in this matter, Best-

---

[15] Again, the Court notes that Best-Lock's counsel previously went so far as to argue that it could fulfill the requirements of its equitable estoppel defense on the record that existed prior to any of the current discovery disputes.  Doc. 120 at 2.

[16] To the extent the other discovery requested by Best-Lock regarding its equitable estoppel defense is relevant to creating a genuine issue of fact as to the arguments Lego has actually made, it appears to the Court that this information would primarily reside with Best-Lock.  Lego's Motion for Partial Summary Judgment asserts that Best-Lock must show that Lego intentionally mislead Best-Lock in order to succeed on one element of equitable estoppel.  Lego Motion for Partial Summary Judgment Br. at 26-29.  Such conduct by Lego would have to be known to Best-Lock according to Lego.

Lock Reconsider Br. at 4, but fails in its affidavit to request any specific depositions, or to explain how any depositions could lead to information sufficient to create a genuine issue of material fact, which is to say, material to the particular issues presented by this Motion.

Best-Lock argues that in connection with its Motion to Dismiss it has "proffered evidence of numerous deficiencies in Lego's discovery responses and failures to produce documents."  Best-Lock Emergency Motion Br. at 3.  Although this may be true, Best-Lock's Motion to Dismiss was filed *prior to* Lego's Motion for Partial Summary Judgment.  The Court will not construe those arguments as providing evidence of what discovery Best-Lock still requires to respond to a later-filed motion.  *See Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13-14 (2d Cir. 2013) (summary order) (holding that a sworn affidavit did not meet the requirements of Rule 56(d) "because it contained only conclusory allegations of incomplete discovery," and declining to construe as a Rule 56(d) affidavit a letter more completely detailing assertions written prior to the filing of a summary judgment motion).  That declination is particularly appropriate in the case at bar, where Lego's Motion for Partial Summary Judgment is narrowed in its application to only one of its claims and to several of Best-Lock's affirmative defenses and counterclaims based upon similar facts.  Best-Lock's demands are not directed in any way to the arguments in Lego's Motion for Partial Summary Judgment, and fail to consider what Lego has alleged and assumed for purposes of that Motion.

Finally, Best-Lock argues that this Court noted in its prior Ruling addressing the preliminary injunctions sought by Best-Lock and Lego that it was unable to discern whether Best-Lock unreasonably delayed in filing this action until further discovery was completed.  Best-Lock Emergency Motion Br. at 3-4.  However, Best-Lock reads more into that statement than it can sensibly carry, the consequence of Best-Lock's ignoring the grounds on which Lego has actually

sought partial summary judgment.  The Court made that statement in the context of addressing Best-Lock's laches defense, which at the time the Court regarded as possibly applicable to copyright actions.  Lego's Motion for Partial Summary Judgment asserts only that Best-Lock's laches defense fails now entirely because the doctrine is not applicable to this case according to *Petrella*, an intervening Supreme Court decision.  Lego Motion for Partial Summary Judgment Br. at 21.  It is unclear then how further discovery as to whether Lego unreasonably delayed in filing this action would preclude summary judgment in its favor, given Lego's purely legal argument.[17]

The Court will not deny Best-Lock relief altogether.  Rule 56(d) is intended as a safeguard against premature grants of summary judgment and should "generally be applied 'with a spirit of liberality.'"  *Riley*, 44 F. Supp. 2d at 459 (quoting 10A Charles A. Wright & Arthur Miller, Fed. Prac. & Proc. § 2740, at 532 (2d ed. 1983)).  Best-Lock has essentially alleged that it has been unable to take or receive any significant discovery at this point in the litigation relevant to its own Counterclaims and affirmative defenses.  In responding to Lego's Motion to Reconsider, Best-Lock states that it has been unable to obtain discovery on numerous issues related to Lego's Motion for Partial Summary Judgment, including those related to the essence of this litigation, the infringement of the copyrights.[18]  Best-Lock Reconsider Br. at 4-8.

---

[17] The Court recognizes that its prior statement regarding discovery also applies to the first element of Best-Lock's equitable estoppel defense.  As stated earlier in this Part of the Ruling, Lego's Motion for Partial Summary Judgment assumes that Best-Lock could create a genuine issue of material fact on this element, but nevertheless argues that Lego is entitled to summary judgment because Best-Lock cannot meet the other required elements of the defense.

[18] Again, however, Best-Lock does not explain what specific discovery it requires and how that would assist it in responding to Lego's current Motion for Partial Summary Judgment. Without such information, the Court cannot determine a course going forward or permit Best-Lock additional discovery.  The Court takes care to note that Best-Lock cannot seriously allege that no discovery altogether in this case has occurred.  Lego has responded in full and in good faith to each of Best-Lock's discovery requests.

In addition, the unique circumstances and procedural posture of this action require an appropriate remedy. There is no operative scheduling order in place for this litigation. The earlier scheduling order contained deadlines which passed long ago, and that order has never been amended by the parties or the Court. The Court did grant the parties certain extensions on responding to discovery in 2015, Docs. 124, 127, but there was no formal end date for the close of discovery that Best-Lock was aware it would be held to, nor was a date set for the filing of dispositive motions. The Court is not aware of a single deposition that has been taken in this litigation. Both parties had reached an impasse in responding to each other's discovery requests in December 2015. The parties essentially stopped communicating for a period of at least three months immediately thereafter.

Given the alleged lack of discovery that has occurred, the lack of an operative scheduling order, and the significant delays in this ongoing litigation, the Court will deny Best-Lock's Emergency Motion, without prejudice to Best-Lock refiling a revised motion and supporting affidavit, whose purposes must be to explain with precision the discovery Best-Lock is entitled to, and why Best-Lock requires that discovery in order to be able to respond to Lego's Motion for Partial Summary Judgment.[19]  Best-Lock is reminded that the discovery it is seeking must be relevant to Lego's Motion for Partial Summary Judgment. If the requested discovery is not tailored to Lego's Motion, the Court will again deny Best-Lock's Motion, this time in plenary fashion, and Lego's Partial Summary Judgment will proceed for adjudication. The Court, it will be appreciated,

---

[19] Best-Lock also asserts that Lego's Motion for Partial Summary Judgment is somehow procedurally improper because it was made without notice to Best-Lock and because Best-Lock should be able to cross move at the same time as Lego. Best-Lock Emergency Motion Br. at 1, 4. The Court finds no merit in either argument. Summary judgment motions may be made at any time unless otherwise specified by the Court. Fed. R. Civ. P. 56(b). Best-Lock points to no rule requiring it to be able to cross move for summary judgment at the same time as Lego and the Court is aware of none. Moreover, Best-Lock may still cross move for summary judgment should it desire to do so.

intimates no present view as to the resolution of that Motion.[20]

## IV.    Conclusion

For the foregoing reasons, the Court makes this Order:

1.    The Motion of Defendant Best-Lock [Doc. 128] to Dismiss the Second Amended Complaint of Plaintiffs Lego for failure to prosecute the action is **DENIED**.

2.    The Motion [Doc. 137] by Lego to Reconsider is **GRANTED**.

3.    The Emergency Motion of Best-Lock [Doc. 135] is **GRANTED,** to the extent that proceedings under Lego's Motion for Partial Summary Judgment [Doc. 130] are **STAYED** pending the Court's further Order, and **DENIED WITHOUT PREJUDICE** in all other respects, which is to say, without prejudice to refiling motion papers by Best-Lock in a manner consistent with this Ruling and Order.

4.    If Best-Lock decides to refile its Motion, as permitted by Paragraph 3 of this Order, Best-Lock must file that additional motion, in a form consistent with this Ruling, by **February 7, 2017**.  Lego may file opposing papers by **February 21, 2017**.  Best-Lock may file reply papers by **February 28, 2017**.

5.    If Best-Lock does not file an additional motion in accordance with Paragraphs 3 and 4 of this Order, it must file its opposition to Lego's Motion for Partial Summary Judgment by **February 7, 2017**.  Lego may file reply papers by **February 21, 2017**.   If the Court desires oral argument on either of these motions, Best-Lock's potential motion pursuant to Rule 56(d) or Lego's

---

[20] Lego makes a cursory assertion in a footnote that Best-Lock's motion is procedurally improper "as a Rule 56(d) motion" as it is "in the incorrect form."  Lego Reconsider Br. at 1 n.1. It is unclear to the Court what Lego means by this statement and Lego does not elaborate further. In any event, because the Court is denying Best-Lock's Emergency Motion it need not address Lego's cursory argument.

pending Motion for Partial Summary Judgment, counsel will be advised.

6.     In these circumstances, discovery will be **STAYED** pending this Court's resolution

of Lego's pending Motion for Partial Summary Judgment.

**The foregoing is SO ORDERED.**

**Dated:   New Haven, Connecticut**
**          January 18,  2017**

    ___/s/ Charles S. Haight Jr._____
**Charles S. Haight, Jr.**
**Senior United States District Judge**