UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEGO A/S, and LEGO SYSTEMS, INC., <br><br> Plaintiffs/Counterclaim Defendants, <br> v. <br><br> BEST-LOCK CONSTRUCTION TOYS, INC., BEST-LOCK LIMITED, HONG KONG, and BEST-LOCK GROUP, <br><br> Defendants/Counterclaim Plaintiffs. | 3:11 - CV- 1586 (CSH) <br><br><br><br> AUGUST 2, 2021 |

**MEMORANDUM AND ORDER**

**HAIGHT, Senior District Judge:**

Plaintiffs Lego A/S and Lego Systems, Inc. move under Federal Rule of Civil Procedure 55(b) for default judgment against Defendants Best-Lock Construction Toys, Inc. and Best-Lock Limited, Hong Kong on all counts of Plaintiffs' Second Amended Complaint [Doc. 84] against those Defendants. Doc. 217. Plaintiffs couple the motion with requests for statutory damages for Defendants' willful copyright infringement, and for reasonable attorneys' fees. The amounts the Court may grant in response to those requests would be added to the judgment against Defendants.

This motion is preceded by the Court's Ruling [Doc. 215] granting Plaintiffs' motion for entry of Defendants' defaults and directing the Clerk to enter those defaults.

The Court must defer consideration of Plaintiffs' motion for default judgment because the Court is not able, on the present submissions, to determine the amount, if any, Plaintiffs should

1

receive for their attorneys' fees.

Plaintiffs' entitlement to attorneys' fees is conferred by 17 U.S.C. § 505, which provides that in civil actions for copyright infringement, the district court "may allow the recovery of full costs" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."

The amount claimed for attorneys' fees in this case is significant. Plaintiffs' attorneys throughout this lengthy and (until recently) energetically contested litigation have been the established firm of Day Pitney LLP. The present motion asks me to include in the judgment against Defendants attorneys' fees paid by Plaintiffs to Day Pitney in the total amount of $969,858.50.

That amount is supported by a declaration of Elizabeth A. Alquist [Doc. 217-5], a Day Pitney partner. Alquist identifies herself and six other individuals as "Day Pitney attorneys who have worked in this matter." Alquist Decl. ¶ 2. The declaration does not recite the status of these six individuals (partner or associate). It does not describe what each attorney (Alquist and the six others) did in handling the case or when they did it. The declaration does not state the hourly rates charged for Alquist or any of the other six attorneys.

The Alquist declaration does include, as Exhibit 1, a typed listing of near-monthly bills, each described in a single line, rendered by Day Pitney to Plaintiffs from November 2011 through February 2021. Doc. 217-6. The list concludes with a recitation of "Total Fees" amounting to $969,858.50 and "Total Disb." amounting to $6,585.79. *Id.* at 4.

This document does not contain any reference to hours expended working on the case. Alquist's declaration says at ¶ 5: "As of March, 2021, Day Pitney LLP has billed the LEGO Group $969,858.50 *for 2601.1 hours in total*." Alquist Decl. ¶ 5 (emphasis added). The factual source of that number of hours, and the identity of the attorneys performing the work, are not stated in the

2

present record.

Alquist says in her declaration at ¶ 7 that "Day Pitney billed the LEGO Group at its standard hourly rates for its professionals over the relevant duration of this matter," without specifying what the rates were for each attorney or what each attorney contributed to the case. Plaintiff's brief on this motion asserts that Day Pitney's "average rate of $372.86 per hour is reasonable," an average calculated by dividing the total fees claimed (derived from the billing list, Ex. 1) by the total hours worked (derived from an unknown source). Doc. 217-1, at 18.

Plaintiffs' brief concludes by saying the LEGO Group "will take the Court's direction if it would prefer a separate application for fees, including additional supporting invoices for the Court's review." *Id.* I have no preference in the matter. My function is to apply the rules articulated by the Second Circuit in the granting or rejection of attorneys' fees. In the case at bar, Plaintiffs' request that their attorneys' fees be paid by Defendants does not in its present form comply with the Circuit's rules.

In *New York State Association for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983), the Second Circuit decided what a party in a fee-shifting case must show in order to recover its attorneys' fees from an adverse party. Judge Newman's oft-quoted opinion declares in principle that "the difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit," and goes on to say that in practice:

> Hereafter, any attorney — whether a private practitioner or an employee of a nonprofit law office — who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.

3

711 F.2d at 1147-48.  These principles govern the case at bar, where Plaintiffs apply pursuant to the copyright statute for court-ordered compensation of their attorneys in a "reasonable" amount.

*Carey,* which the Second Circuit decided in 1983, has been followed and enforced ever since. In *Mation S. Mishkin Law Office v. Lopalo*, 767 F.3d 144 (2d Cir. 2014), the Second Circuit states that *Carey* "crafted a new rule" for attorney's fee applications, quotes *Carey*'s requirements that a fee applicant "must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done," and adds that "[t]he [f]ailure to do so results in denial of the motion for fees." 767 F.3d at 148 (citing and quoting *Carey*, 711 F.2d at 1148, and *Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 53 (2d Cir. 1992)).

One must be mindful of the fact that the Second Circuit decided *Carey* in 1983, a relatively primitive time when law firms did not generate elaborate computerized records or employ squads of accountants and marketing specialists.  The Second Circuit's more recent decisions allow for the effect of modern technology upon the definition of "contemporaneous time records."  In *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148 (2d Cir. 1994), an application for attorneys' fees was resisted on the ground that the firm in question "did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records." 34 F.3d at 1160.  The Second Circuit rejected that argument:

> A review of the submissions made by Davis & Eisenberg shows that they made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records.  We believe this falls sufficiently within the meaning of "contemporaneous," and that such a practice is not contrary to the dictates of *Carey.*

*Id*.

The Second Circuit reiterated that concept in *Mishkin*: "So long as an attorney 'made contemporaneous entries as the work was completed, and that [her] billing was based on these contemporaneous records,' *Carey* is satisfied." 767 F.3d at 149 (citing and quoting *Cruz,* 34 F.3d at 1160). *Mishkin* also quotes with approval *David v. Sullivan*, 777 F. Supp. 212 (E.D.N.Y. 1991): "Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees." 767 F.3d at 149 (quoting *David*, 777 F. Supp. at 223).

*Carey*'s unchanging rule is that, whatever the method of presentation may be, an application for attorneys' fees must *au fond* be based upon *contemporaneous* work records. If an applicant cannot show that, a district court must deny the application. The Second Circuit made that plain in *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010): "*Carey* sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications. . . . In other words, *Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases."

The problem with Plaintiffs' application for attorneys' fees is that it fails to satisfy both elements of record keeping mandated by *Carey*: content and time. As for content: the requisite specifics with respect to the numerous attorneys who worked on the case are entirely absent. As for time: there is nothing contemporaneous about Plaintiffs' present submission. I accept that Ms. Alquist was engaged in the litigation throughout. She appears to have been the partner in charge of the case, and was certainly familiar with it; but her declaration, sworn to on March 8, 2021, cannot be regarded as "contemporaneous" with the legal services beginning in 2011 for which compensation is sought. The list of billings Alquist submits as an exhibit to her declaration may

5

serve as *aides-mémoires* for the narrative in the declaration, but they are not "contemporaneous time records" in the sense Judge Newman used that phrase in *Carey*. To satisfy that requirement, "[t]he records must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).[1]

For the reasons stated, the Court will not include in the judgment to be entered in this case any award of attorneys' fees for the Plaintiffs. If Plaintiffs wish to pursue this claim, they must on or before **August 27, 2021,** file supplemental submissions which comply with the governing law of the Second Circuit. Plaintiffs' motion for a default judgment is held in abeyance during the interim.

It is SO ORDERED.

Dated:   New Haven, Connecticut
            August 2, 2021

                                                                */s/Charles S. Haight, Jr.*
                                                                CHARLES S. HAIGHT, JR.
                                                                Senior United States District Judge

---

[1] In that regard, attorney's fee applications are different from poetry, which Wordsworth says "takes its origin from emotion recollected in tranquility." *Preface to Lyrical Ballads* (1800).