UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEGO A/S, and LEGO SYSTEMS, INC., <br><br> Plaintiffs/Counterclaim Defendants, <br> v. <br><br> BEST-LOCK CONSTRUCTION TOYS, INC., BEST-LOCK LIMITED, HONG KONG, and BEST-LOCK GROUP, <br><br> Defendants/Counterclaim Plaintiffs. | 3:11 - CV- 1586 (CSH) <br><br><br><br> NOVEMBER 8, 2021 |

## RULING ON FINAL JUDGMENT AND DECREE

**HAIGHT, Senior District Judge:**

In this copyright infringement action, Plaintiffs Lego A/S and Lego Systems, Inc. move under Federal Rule of Civil Procedure 55(b) for default judgments against Defendants Best-Lock Construction Toys, Inc. and Best-Lock Limited, Hong Kong on all counts of Plaintiffs' Second Amended Complaint [Doc. 84] against those Defendants.

Until the very recent past, this case was vigorously litigated by counsel for the parties. The Court has entered a number of rulings, familiarity with which is assumed. However, a time came when the attorneys for Defendants ceased their representation, Defendants did not replace them, and the Court eventually entered notices of default against both Defendants under Rule 55(a). The circumstances giving rise to those defaults are fully described in the Court's Memorandum filed on December 29, 2020 [Doc. 213] and Ruling filed on February 4, 2021 [Doc. 215], and are not here recounted. Plaintiffs now move for default judgments under Rule 55(b).

1

**I**

The requested judgments, if granted, would award Plaintiffs statutory damages for Defendants' willful infringements in the amount of $150,000, and require Defendants to pay $972,972.29 in attorneys' fees, costs and expenses incurred by Plaintiffs in connection with the action.

Plaintiffs' most recent submissions reveal that of that amount of $972,972.29, legal fees account for $966,386.50, and the balance of $6,585.79 was for costs and expenses. *See* Plaintiff's Application [Doc. 222] at 4.

In a Memorandum reported at 2021 WL 3291524, the Court deferred decision on Plaintiffs' initial motion for judgment in those amounts because Plaintiffs' submissions failed to comply with the Second Circuit rule that applications for attorneys' fees must be supported by "contemporaneous time records" which "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Lego A/S v. Best-Lock Constr. Toys, Inc.*, No. 3:11 - CV-1586 (CSH), 2021 WL 3291524, at *2 (D. Conn. Aug. 2, 2021) (quoting *New York State Ass'n for Retarded Child., Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983)).

Plaintiffs seek to satisfy those requirements with the declaration [Doc. 222-1] of Elizabeth A. Alquist, the partner at the Day Pitney LLP firm in charge of the case, and exhibits thereto. The Alquist declaration lists the names of the considerable number of Day Pitney partners, associates, or employees who worked on the case from its inception in 2011 through August of 2021, and states as to each individual, his or her status, area of responsibility in the case, and hourly billing rate.

An exhibit to the Alquist declaration consists of copies of all invoices Day Pitney sent during the course of the litigation to Lego's home office in Denmark. Alquist says at ¶ 29 of her

declaration:

> Exhibit 1 is the true and accurate copies [*sic*] of Day Pitney LLP's invoices sent to the LEGO Group between 2011 and 2021 for this matter. The invoices reflect the contemporaneous time entries made by the Day Pitney LLP timekeepers listed above for the services rendered on each day as well as costs and expenses incurred.[1]

Doc. 222-1, at 5 (¶ 29 ).

This declaration does not describe or include an example of the "contemporaneous time entries" made by the Day Pitney individuals which the firm's invoices are said to "reflect." However, certain reasonable inferences may be drawn. It appears from Exhibit 1 that Day Pitney's practice was to submit monthly invoices to Lego which described in detail the activity in the case during the preceding month for which charge is made. For example, pages 129-134 of Exhibit 1 consist of an invoice dated April 18, 2016, including five pages of detailed individualized entries for dates on and between March 3 and March 31, 2016, which state for each individual on each date: a description of the work performed, the hours consumed, and the amount of the resulting charge. Time consumption is stated precisely, in tenth-of-an-hour components. Thus, Alquist's activity during March is described as, on March 4, having conferred with a colleague "regarding motion for summary judgment outline and plan" for "0.8 hours;" on March 22, "[r]eview and revise draft opposition to motion to dismiss" for "1.3 hours;" and on March 31, "[r]eview and revise opposition to motion dismiss; study draft of motion for summary judgment; confer with team regarding same and arguments on research regarding same" for "7.9 hours." Doc. 224, at 129, 131, 133.

---

[1] "Timekeepers" is an odd word for Alquist to use in describing practicing attorneys, who in the daily practice of their profession probably do not think of themselves or refer to each other as "timekeepers." In the present context, I construe this noun as an assertion that these attorneys were careful to record and describe their work on the case and state the time it consumed.

Alquist's sworn declaration that Day Pitney's invoices to Lego "reflect the contemporaneous time entries" of the firm's attorneys, when considered together with the content of the invoices themselves, demonstrate Plaintiffs' compliance with the requirement articulated in *Carey* that an application for attorneys' fees be supported by "contemporaneous time records." The invoices' itemized specific recitations of work performed during the preceding calendar month, expressed in measures of one-tenth of hours, are based, Alquist's declaration avers, upon "contemporaneous time entries" made by the participating individuals. The adjective "contemporaneous" is a relative term. As used in the *Carey* decision, and in the context of this case, "contemporaneous" draws the distinction between time records prepared at or about the time the services described were rendered, and purported time records prepared at a later time to support a claim against another party for attorneys' fees. *Carey* and its progeny hold that time records in the first category are "contemporaneous" and support a claim for attorneys' fees. Time records in the second category are not and do not.

Alquist's declaration describes the firm's practice of attorneys making written entries which specify the work performed and the time consumed. The substances of those entries are restated in the invoices, which then calculate the resulting fees. It is of no consequence that the original entries are not produced to support this claim for attorneys' fees. The party resisting such a claim in *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers*, 34 F. 3d 1148 (2d Cir. 1994), argued that the law firm in question "did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records." *Id.* at 1160. The Second Circuit rejected that objection, because a review of the law firm's submissions "shows that they made contemporaneous entries as the work was completed, and that their billing was based on

these contemporaneous records," a practice which is "not contrary to the dictates of *Carey*." *Id.* The Day Pitney firm makes the same showing in the case at bar.

I conclude that Plaintiffs' claim against Defendants in the amount of $ 972,972.29 for attorneys' fees and costs is adequately supported by contemporaneous time records. I must now consider whether Plaintiffs are entitled to recover that amount from Defendants as part of the judgment against Defendants.

## II

The statutory basis for fee shifting in this case is found in the Copyright Act, 17 U.S.C. § 505, which provides that "[i]n any civil action" under the statute, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States," and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

Judge Newman observed in *Twin Peaks Productions Inc. v. Publications International, Ltd.*, 996 F.2d 1366 (2d Cir. 1993), that "[a]s to the copyright attorney's fees," the standard for awarding fees "is very favorable to prevailing parties; indeed, fees are generally awarded to a prevailing plaintiff." *Id.* at 1383 (citations and internal quotation marks omitted). For that proposition, *Twin Peaks* cited and quoted *Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir. 1986), where the Second Circuit said: "Because the Copyright Act is intended to encourage suits to redress copyright infringement, fees are generally awarded to a prevailing plaintiff," in contrast to attorneys' fees to prevailing defendants, which are "awarded circumspectly to avoid chilling a copyright holder's incentive to sue on 'colorable' claims." *Id.* at 57 (citation omitted).

Consistent with that rule, I hold that the Plaintiffs in the case at bar, as prevailing parties, are entitled to recover "a reasonable attorney's fee" as part of the costs. One must now ask whether the

fee amount Plaintiffs claim is "reasonable."

## III

Whether attorneys' fees are "reasonable" depends upon two components: the reasonableness of the *time* expended on the attorneys' work on the particular case; and the reasonableness of the *rate charged* for that work.

In the case at bar, Plaintiffs' most recent submissions summarize these two components. Plaintiffs aver that as of August 2021, the Day Pitney firm has billed the Lego Group "for 2549.5 hours in total regarding this action," Alquist Declaration [Doc. 222-1] at ¶ 30, and that of the $972,972.29 sought to be recovered under this heading, "$6585.79 accounts for costs and expenses and $966,386.50 accounts for legal fees charged by Day Pitney LLP," Plaintiff's Application [Doc. 222] at 4. Thus, the average hourly rate charged in these attorneys' fees is $379.05 ($ 966,386.50 in fees divided by 2549.5 in total hours billed).

Plaintiffs are entitled to a judgment against Defendants for attorneys's fees and costs in the amounts claimed if these attorneys' hours were reasonably expended during the case, and the hourly rates charged for the work was reasonable in amount.

## IV

Having presided over this contentious litigation, I conclude without difficulty that the 2549.5 hours in attorneys' time described by the Day Pitney firm in its invoices were reasonably expended during the course of the case.

Plaintiffs' claim of copyright infringement presented complicated factual questions concerning international commerce, and researching issues under copyright law. During a near decade, the case passed through an evidentiary hearing on a motion for a preliminary injunction,

numerous discovery requests and disputes, and cross-motions for summary judgment. Not surprisingly, Day Pitney's representation of Plaintiffs during this complex and extensive litigation engaged the efforts of a number of Day Pitney partners, associates, and staff, whose professional experience, activities in the case, and hourly billing rates are stated in detail in the contemporaneous invoices. Those descriptions do not reveal any areas where the attorneys' efforts fell outside the boundaries of necessary and compensable professional representation. Plaintiffs prevailed repeatedly at various stages of the case.

I am satisfied that the hours for which the firm billed the Plaintiffs were effectively and reasonably spent on the case.

**V**

I also conclude that the average hourly rates Day Pitney charged Lego are reasonable because Lego paid the invoices without protest, and the rates fell within the range of fees charged in this District.

In *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-CV-1924 (AWT), 2014 WL 3908596 (D. Conn. Aug. 8, 2014), Judge Thompson cited *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008), for the proposition that "there is a strong presumption that the rate a paying client actually did pay during the course of the litigation is reasonable." 2014 WL 3908596, at *5. Another district court has interpreted *Arbor Hill* as standing for the proposition that "the reasonableness of an hourly fee may be determined exclusively by the rate a paying client would be willing to pay," and found that the rates sought were reasonable because the defendant "ha[d] in fact paid these rates." *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 CIV. 139 (GEL), 2009 WL 935674, at *6 (S.D.N.Y. Apr.

7, 2009) (citation and internal quotation marks omitted). In *Wells Fargo*, Judge Thompson went on to say: "The presumption that what a client actually paid constitutes a reasonable fee has also been endorsed by the United States Supreme Court." 2014 WL 3908596, at *6 (citation omitted).

That presumption arises in the case at bar because during years of litigation, Lego's sophisticated officers in Denmark, apparently without question or protest, paid the monthly invoices sent by Day Pitney. Those payments support the presumption, which I draw, that the hourly rates recited in the invoices were reasonable in amount.

In addition to that presumption of reasonableness for these hourly rates, the complexity of the issues and their resolution in Plaintiffs' favor during the litigation militate in favor of a finding that the rates charged by the Day Pitney attorneys were reasonable in amount. *See* the discussion in *Wells Fargo*, 2014 WL 3908596, at *7-9.

Moreover, the hourly rates charged by Day Pitney attorneys, which average $ 379, fall within the range of fees charged in the District by attorneys of comparable stature and experience. *See, e.g., Adobe Sys. Inc. v. Marrero*, No. 3:11CV290 (RNC), 2011 WL 13228500, at *4 (D. Conn. Nov. 16, 2011) (holding $290 per hour rate reasonable in 2011); *Wells Fargo Bank*, 2014 WL 3908596, at *9 (noting that according to an industry report in 2012, "third quartile rates for attorneys with more than 21 years of experience is $621.14 in Bridgeport and $500.00 in Hartford.");[2] *Good Sports, Inc. v. Am. Iron Outfitters, Inc.,* No. 3:18-CV-1003 (VAB), 2019 WL 10303629, at *8 (D. Conn. Feb. 1, 2019) (hourly rates between $175 and $450 found reasonable); *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-01897 (CSH), 2017 WL 1399630, at *5 (D. Conn. Apr. 18, 2017) (hourly rates

---

[2] *Aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015).

8

between $300 and $500 found reasonable in intellectual property litigation).

For the foregoing reasons, I conclude that the attorneys' fee invoices submitted by Day Pitney to Lego and paid by Lego were reasonable in amount.

Accordingly, the judgment to be entered in favor of Plaintiffs and against the two Defendants will include the amount of $972,972.29 for attorneys' fees and accompanying expenses and costs.

As of August 2021, that is the total amount of the invoices rendered by the Day Pitney firm to the Lego Group during the course of the litigation. As noted, the invoices are comprised of fees for professional services and costs incurred. The fee amounts will be allowed in the judgment, for the reasons stated *supra*. I have examined the claimed expense costs. They are appropriate in nature and reasonable in amount, and will be allowed as well.

## VI

It remains to consider Plaintiffs' request that the judgment in their favor also include statutory damages for Defendants' willful infringement, in the maximum statutory amount of $150,000.

The Copyright Act provides in 17 U.S.C. § 504(a) that an infringer of copyright is liable for either "actual damages," *id.* § 504(a)(1), or "statutory damages," *id.* § 504(a)(2). Under the statutory scheme, a copyright owner injured by infringement may recover the owner's "actual damages" and "profits of the infringer," *id.* § 504(b), or the copyright owner may instead elect to receive "statutory damages" with respect "to any one work," in a sum of "not less than $750 or more than $30,000," *id.* § 504(c)(1), unless the copyright owner proves "that infringement was committed willfully," in which event "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000," *id.* § 504(c)(2).

In the case at bar, Plaintiffs have elected to claim statutory damages, and seek the statutory

9

maximum amount of $150,000, on the ground that Defendants' infringement was willful.

The first issue under this heading is whether Defendants "acted willfully within the meaning of § 504(c)(2) for purposes of enhancing statutory damages." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986). In *Fitzgerald*, the Second Circuit further construed § 504(c)(2) as a provision by Congress for "a reduction in the minimum level of statutory damages should the defendant establish that it neither knew, nor had reason to know, that its conduct represented an infringement," thereby allowing the defense of "innocent intent." *Id*.

In the case at bar, the Defendants are in no position to sustain a defense of "innocent intent" with respect to their creation of the toy minifigures the Court has held infringed Lego's copyrighted minifigures. I previously had occasion to note the statement of Torsten Geller, Defendants' Chief Executive Officer, to the *Hartford Courant,* where Geller explained the similarities between the shapes of Best-Lock's figures and Lego's by saying, "I did the figures because I want to piss them off." *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 607 (D. Conn. 2019) (ruling on cross-motions for summary judgment). In many cases, the existence of an unexpressed "willful" state of mind is inferred from other conduct, but this case requires no inference: Geller's public statement articulates – nay, proclaims – a deliberate intent which must be regarded as "willful" for § 504(c)(2) purposes.

That conclusion is not altered by Geller's subsequent claim that his "piss them off" remark was "tongue-in-cheek," 404 F. Supp. 3d at 607, a clearly tactical disclaimer, or by his contention that the Best-Lock figures did not infringe the Lego copyrights, a legally incorrect assertion I rejected in the prior summary judgment ruling. The availability of statutory damages depends upon whether Defendants' infringement "was committed willfully," the state of mind condemned by § 504(c)(2).

Guidance on the issue of willfulness is found in *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250 (2d Cir. 1992), where the Second Circuit held that "for the purpose of awarding enhanced statutory damages under § 504(c)(2), an infringement is 'willful' if the defendant had 'knowledge that its actions constitute an infringement.'" *Id.* at 252 (quoting *Fitzgerald*, 807 F.2d at 1115). The Court then added that such knowledge "need not be proven directly but may be inferred from the defendant's conduct," and concluded that "[w]hile an infringement may not be willful" when a party "reasonably and in good faith believes that its conduct is innocent, this analysis is subject to the corollary that reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) suffices to warrant award of the enhanced damages." *Id.* (citations and internal quotation marks omitted).

The record in this case, which includes the refreshing candor of Mr. Geller's remark to the *Hartford Courant*, forecloses a conclusion that Defendants reasonably and in good faith believed that their conduct did not infringe Plaintiffs' copyright. The record compels the contrary conclusion.

## VII

I am presented, then, with a willful infringement, which § 504(c)(2) entitles Plaintiffs to claim and empowers the Court "in its discretion" to award statutory damages, in a "sum of not more than $150,000." The Second Circuit has noted "the wide discretion the Copyright Act affords the trial court in setting the amount of statutory damages." *Fitzgerald,* 807 F.2d at 1116.

"The broad discretionary power given to courts to make such an award serves the dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers." *Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 303 (D. Conn. 2012) (citation and internal quotation marks omitted). The Supreme Court has said that statutory damages under

11

the Copyright Act "not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952). This principle recognizes "the deterrent effect a [statutory] damage award will have on others besides the defendant." *Scholz Design, Inc. v. New Horizons Dev., LLC*, No. 308CV01465(MRK)(WIG), 2009 WL 1043870, at *1 (D. Conn. Apr. 13, 2009). *See also Adobe Systems,* 895 F. Supp.2d at 303 (in determining the amount of statutory damages, courts have considered "the deterrent effect a damage award will have on others beside the defendant.").

Courts are not required to award the maximum amount of $150,000 in statutory damages whenever an infringement is willful. In *Adobe Systems*, a case of multiple acts of software piracy in violation of the Copyright Act, Judge Underhill referred to the statutory damages maximum of $150,000, and then held that, considering the particular factors in the case, "based on [defendant's] willful infringement, statutory damages in the amount of $90,000 for each of the twenty-eight copyrights identified in the complaint is appropriate." 895 F. Supp. 2d at 303. The maximum amount was not awarded on any single copyright, but the total award of statutory damages amounted to $2,520,000. *Id.*

Other district courts have held that where one or several copyrights have been willfully infringed, the statutory maximum should be awarded on each infringement. *See, e.g., Hounddog Prods., L.L.C. v. Empire Film Grp., Inc*., 826 F. Supp. 2d 619, 624 (S.D.N.Y. 2011) (unauthorized distribution of copyrighted film, $150,000 in statutory damages awarded); *Microsoft Corp. v. Grey Computer,* 910 F. Supp. 1077, 1091 (D. Md. 1995) (where court found that defendant "intentionally infringed" on plaintiff's three computer software copyrights, the Court "impose[d] the maximum penalty authorized by the statute" as to each copyright, and awarded plaintiff $300,000, the statutory

maximum at that time being $100,000 per infringement).

Having considered the relevant factors, I conclude that the award of $150,000, the maximum permissible amount of statutory damages, is appropriate in this case. In determining the amount of statutory damages, courts have considered factors such as "the expenses saved and profits reaped by the defendant, the revenues lost by the plaintiff, the value of the copyright, the deterrent effect a damage award will have on others besides the defendant, whether defendant's conduct was innocent or willful, whether the defendant cooperated in providing records from which to assess the value of the infringing material produced, and the potential for discouraging the defendant from future violations." *Scholz Design*, 2009 WL 1043870, at *1 (citing *Fitzgerald*, 807 F.2d at 1117).

These factors, where applicable, militate in favor of the maximum award. Lego's distinctive copyrighted minifigures are globally popular, and consequently the copyright is valuable. Presumably Best-Lock realized some profits through the sale of infringing products, although the record does not establish the amount, and Defendants have not been particularly cooperative in providing probative information on the point. Defendants' infringement was willful, not innocent. Statutory damages in the maximum amount will have the desirable effect of deterring future infringements not only by Defendants, but by others engaged in the competitive business of creating toys for the entertainment of children (and their elders).

## VIII

For the foregoing reasons, Plaintiffs' "Motion for Default Judgment" against all Defendants [Doc. 217] is GRANTED. The Final Judgment and Decree entered concurrently with this Ruling will award to Plaintiffs, and against Defendants, jointly and severally, the amount of $150,000 in statutory damages for violation of the Copyright Act.

The Judgment and Decree also awards to Plaintiffs, and against Defendants, jointly and severally, the amount of $972,972.29 in respect of attorneys' fees, expenses and costs.

In consequence, the Final Judgment, in favor of Plaintiffs and against the Defendants, jointly and severally, is in the total amount of $1,122,972.29.[3]

The judgment will bear interest at the statutory rate from the date of the Judgment until paid.

Upon entry of the Judgment, the Clerk is directed to close the file.

It is SO ORDERED.

Dated:  New Haven, Connecticut
        November 8, 2021

                                            /s/Charles S. Haight, Jr.
                                            CHARLES S. HAIGHT, JR.
                                            Senior United States District Judge

---

[3] Plaintiffs were granted a default judgment against Defendants on all counts pleaded in the Second Amended Complaint. Count II alleges the common law tort of defamation. Count III alleges violation of the Connecticut Unfair Trade Practices Act. As prayed for by Plaintiffs, the Final Judgment entered concurrently herewith includes judgment on these two counts in Plaintiffs' favor *as to liability*. However, Plaintiffs have offered no claim or calculation with respect to damages caused by Defendants' conduct described in these counts, and the Court regards such claims as abandoned by Plaintiffs.